Good morning, and may it please the Court. My name is Wendell Hall. I represent Alpha Services and Robert Zahary. I'm the appellant in this matter. The central issue in this case is whether the Department of Labor legally fined Alpha Services for providing transportation to its forestry workers that's markedly safer than what the Department of Labor requires. Granting Skidmore deference to the Department of Labor's application of the Department of Transportation's regulations, the District Court affirmed the ARB, or Administrative Review Board's, decision fining Alpha for providing safe transportation. This was erroneous. The standard of review for this matter is de novo. A granted summary judgment is reviewed de novo. The District Court was correct to use the Skidmore framework to analyze the appropriateness of the Administrative Review Board's decision. The District Court erred, however, because it was applied incompletely. The Skidmore framework has four basic elements. First, how thorough was the administrative decision? Was it valid? Was it consistent with what the agency does and has done? And are there any other... Can I switch you to just a few issues that concern me, and then we'll take it from there. So let me see if I understand your claim here. Your claim is that the regulation is invalid or as applied to forestry workers? The regulation is the regulation that was applied has to be applied. It's applied. But your argument is, so you're really not arguing that it's an invalid regulation. The regulation that we're dealing with was promulgated by notice and comment and whatnot. Correct? Right. But it was promulgated by the regulation that applies. There are two sets of standards that are in this case. There's a standard that's established by the section 500.104. That's the Department of Labor's motor vehicle standards. That was promulgated through notice and comment rulemaking for crop agriculture. Then there is the section that's at issue here, which is 500.105. That was promulgated by the ICC back in 1957, then adopted by the Department of Transportation. That was the section that was applied here. And MISPA or AWPA requires that that section be applied as appropriate and reasonable in the circumstances. We are not contending that 500.105 is somehow invalid or lacks the force of law. 104 cannot be applied to us because it wasn't promulgated in a rulemaking that considered the special issues related to forestry. Why did it have to be? We said in, what was the name of the case? Bresgal. Bresgal. That forestry workers were covered by the- Forestry workers are covered, but first of all, there was- So after we said that, why couldn't they just interpret the regulation to apply? Because the MISPA imposes very specific substantive standards and a specific set of decision making criteria that have to be analyzed through the prism of notice and comment rulemaking. That's statutory. So if that wasn't there, if MISPA didn't specifically say you have to go through these four or five, these six factors through notice and comment rulemaking, then yes, they could do that. But they can't do that because Congress took that choice away from them. Can I ask a question in the summary judgment proceedings? Let me see if I can find the, I guess it's 41, CR 41. You made a concession to Judge Tallman. Yes, Your Honor. Can you explain that? It says for purposes of the summary judgment motion, we'll accept that MSPA applies, and we also accept for the purposes of this proceeding that section 500.105 also can apply to ALFA. How does that affect what you're arguing today? It doesn't really because our focus is on what's the proper interpretation of 500.105. The way the summary judgment... You said in answer to Judge Piazza's question, you said as applied. So that's why I'm confused. Right. The section that is at issue here is 29 CFR 500.105. Yes. Right. Okay. That's a... What you referred to before Judge Tallman. Right. That's a valid regulation. It was adopted, as I say, appropriately. By notice and comment. Through notice and comment rulemaking by the ICC. And then later adopted wholesale by the Department of Labor in its initial MSPA rulemaking. Right. And the key is this, is that when the Department of Labor adopted these regulations, the Department of Labor's position, because this was before Brezgal, was that crop agriculture, I mean forestry was not covered whatsoever. So there is no way that logically that they could have sat down and done the Well, what more would they had to have done with respect to forestry? I mean, after Brezgal, it just seems like they could say, okay, we've adopted this regulation. We initially said that it didn't apply to forestry workers, but now it applies to forestry workers. The Ninth Circuit has told us it applies to forestry workers. And actually, that's exactly what the Ninth Circuit said it wasn't doing. Because remember... Well, I mean, they interpret it. We interpret it to apply to forestry workers. Well, what it said is you will enforce MSPA as to forestry workers, firefighters, and others. But the whole intention of the Ninth Circuit's opinion was to push the issue back to the Department of Labor. Because remember the district... And they said, we're going to apply that, you know, they didn't apply it. Why do they have to then go through notice and comment? Because Congress said so. That's what Congress said in 1841. It's your view that they can't interpret the regulation? No, it's not my view that they can't interpret the regulation. It's my view that Congress required them, if they are going to have forestry-specific regulations that apply to forestry, that they must go through notice and comment rulemaking. I'm having a hard time. Just maybe you can help me from a practical standpoint here. What is behind all of this vigorously litigating an $800 fine that was assessed nearly seven years ago? What's really at stake for ALFA here? It's certainly not the $800. What is at stake? It costs more than $800 for you to come here. Oh, without question. Unless you're very reasonable. I am. I am for the video. The reason we're here is because safety matters. ALFA is an industry that has been scarred by a terrible reputation of mistreating workers for years. And ALFA Services actively does what it can to change that reputation. ALFA Services, Mr. Zaharie, has made telephone calls to families with workers who have been injured and has to tell family members that their husband, their dad, is not coming back. And they'll make, you know, or they're very injured. If you've made one of those phone calls, it matters a lot. Safety matters a lot. And these crew carriers, it's not just advocacy. These are substantially safer than the 15 passenger vans that the Department of Labor would allow. And it's worth it to ALFA to fight for the right to use these crew carriers and carry the trailers because it's not practical just to have crew carriers. Is there some financial component for ALFA not being able to trailer things? I'm sorry. Well, I mean, is there a difference between the two vehicles in terms of if you, you know, when you, is there a difference in what they can do with the vehicle and how they get things into the locations? The difference isn't so much with what they do with the vehicle. The difference is, the practical difference, why they can't say double the number of crew carriers and have, is drivers. MISPA requires certified drivers with particular qualifications. Those are very, very hard to find. So if we tried tomorrow, let's buy double the number of crew carriers or number of pickup trucks. We just can't do that because there are limitations on the number of, numbers of available drivers. So we just, we can't do that. We're stuck. And the safest way that we know to provide transportation in the environments we work in are these crew carriers. And what you're basically arguing then is given all that's gone before and concessions and so on, what this boils down to is you want the Department of Labor to address your contention that the carriers are safer than the buses and that they haven't had a proceeding where you can make that case. Partly. I won't say that if tomorrow that they issued a notice of comment, a notice of proposed rule, we wouldn't comment and participate. No, what we really want is, there's been suggestions in the government's briefs, both in the district court and here, that we don't want to be regulated. We do want to be regulated, but we want to be regulated right. Okay, so how? If we rule for you, what do you want the next step to be? The next step will be a reversal and a remand to the district court. Is that what you're asking? No, I don't know. You tell me. No, what I want is I want the district court's judgment to be reversed. I want it to be remanded to the district court or for this court to apply Skidmore completely and thoroughly, looking at all of the considerations. But so what? That's a document. I just want to say it doesn't apply. I want to be able to use crew carriers every day and keep our workers safe. You want to overturn the appeals, or whatever, the council's, the administrative body's decision. Right. You prevailed before the ALJ. Correct. Went up on appeal to the administrators. And lost. And lost. And you want that decision overturned. Correct. I'm sorry if I didn't. That's what you want. I wasn't processing your question correctly. Yes, Your Honor. Exactly. I want the ARB decision eliminated. And it should be noted that the DOL itself doesn't follow the ARB's decision. So that would mean that you really aren't challenging the regulation. Correct. We're challenging the application of the regulation. I guess that brings us back to where you began with me, Your Honor. Yes, that's what I was getting at. You're saying, okay, even if you apply this to us, they misapplied, the appeals board just got it wrong. Absolutely. That's what you're arguing. They got it wrong for a number of reasons. They got it wrong because they implied a word that doesn't exist in the regulations. Original design versus design. They ignored, they misinterpreted the test for how 501.105 is supposed to apply. 501.105 is supposed to apply. Department of Labor regulations says use controls. Use is the most important factor. The ARB ignored that. The ARB decided that because of the Department of Labor, the regulation exempts buses, we wouldn't be regulated. Of course, we'll be regulated under regular motor vehicle safety standards. The ARB... You wanted to save some time. I do. I do, Your Honor. But I also want to make sure I answered your question before I sat down. I understand your point now. All right. Thank you, Your Honor. May it please the Court, Edward Himmelfarb of the Department of Justice, representing the Secretary of Labor. The first thing to point out, we spoke a lot about, in our brief, about waiver of issues and what they argued before the Administrative Review Board and the whole administrative process. I'll leave that aside because it's all in the briefs, unless the Court wants to ask questions about it. But the thing to keep in mind here about safety is that there are, three kinds of vehicles that can be used here. One is a bus. Let me just ask you one that I think Judge Pius or Judge Fischer read from the record, a particular statement on, it was on 41, that talked about, it was by Mr. Hall, and it basically said, number one, we are not, and to the extent we were, we withdraw the argument that we've referred to as the Brand X argument. For purposes of this motion, this proceeding, we will accept that the MSPA is, MSPA applies. Okay? We will also accept that for the purposes of this proceeding, that section 500.105 also can apply to Alpha. Of course, we do not accept that it's designed and constructed in a way that you know, that an interpretation designed and constructed that you know, locks in unsafe transportation can possibly be consistent with the MSPA. So what did they concede in that statement in front of Judge Tallman that they're now trying to raise? No, Your Honor, it's very difficult for me to say. But what Judge Tallman said in his opinion is they've waived most of their arguments. We spelled out why and how they waived the arguments by stipulating that the statute cover them, by stipulating that their employees are agricultural workers, which is a term within both the statute and the regulation. And their position was entirely different. Now, we can talk about whether this is a truck or a bus. I'd be happy to do that. But they were arguing something at the administrative level one way, and they're arguing something now here differently. Now, the point that I was trying to make about the trailer is that the issue is not so much about the converted trucks, because the issue is whether you can have a trailer attached to it. The trucks themselves with the passenger compartments are subject to regulation under the regulation that applies to the standards for passenger compartments. And if that passes muster under that regulation, there's not a problem with using them. There's a problem with using them with an attached trailer. The trailer causes the safety issue as far as the DOT and Department of Labor are concerned. So that's really the issue here. They've been using these converted trucks with trailers attached to them. That's where the violation occurs. Well, when I said about the trailer, Mr. Hall seemed confused about my mentioning of the trailer. So what is this really about from your perspective for them? It's not the $800 fine. It's they want to pull trailers. They want to pull trailers, apparently. But he says it has to do with the drivers and the safety of their workers. Presumably, if you have one vehicle and a trailer, you need one driver. If you can't put the trailer on the vehicle, you're going to need a second driver. There's no question about that. But that's what the regulations require. And these regulations are based on safety considerations. You don't want the trailer attached to a truck. So that's where this whole issue—that's what the whole issue boils down to. If they have a second driver and they can haul the portable toilet and the equipment that they were previously hauling in the converted truck, they can take that up separately. And I can't say— How many workers can the truck accommodate? How many workers can this—I'm not sure about that, Your Honor. But enough to satisfy them. Or the carrier. The carrier, that's right. There are enough workers who can fit in there to satisfy them. This is not a question of— So what are they adding the trailer on for? The trailer is supposed to carry equipment for them and— Not passengers. No. Equipment and portable toilet. And that's not permitted. They're required to have the portable toilet with the workers by another regulation. Isn't that right? That may be. I'm not sure about whether it's required by regulation, but it's a good idea to have that. Yes, it's certainly a good idea. I'm sure it's required. Okay. So they can take that up separately. This is the forest. Well, but I mean— No need to potty. Yeah. We won't talk about that, Your Honor. So that's really the central question, whether you can attach a trailer to it. So could you go back up just a little bit— Certainly. And sort of explain to me what happened here with this regulation that is after Briscoe, after we decided Briscoe. Well, here's what happened in that case. The Court interpreted the language agricultural employment in the statute. In the statute. In the statute. The regulation already had that term in the regulation, and it's almost absolutely identical language. So if it means what the Court said it means in the statute, then by English, it means the same thing in the regulation. There's no reason to have further— Did DOL publish something or issue a bulletin or— No, no, it did not. They just suddenly said this regulation now applies to forestry workers. Yeah, I think when we come into this Court, we try to do what the Court tells us to do, and that's what happened here. The Court said you can't continue not to enforce this against forestry employees. We said, okay, we will. We're going to enforce it. The regulation— Okay, now he says, well, you know, there are different considerations when you're talking about forestry workers, and you should have done a separate analysis with respect to forestry workers. Well, Your Honor, I don't think so, because the same considerations go into interpreting the statute. The statute talked about agricultural employment. The Court said that includes forestry. The same language in the regulation. That would include forestry also. What the Court did—the interesting thing is the district court required the agency to issue new regulations. This Court reversed that part, and it said it may not be necessary to do that. And so the agency looked at it and decided it wasn't necessary to do that. Now, when they adopted the transportation regulations for the agricultural workers at first, they looked to the Department of Transportation standards. Is that right? Yes, they adopted the Department of Transportation. Yes, they adopted it. And it actually says in the regulation, and it cites the DOT regulation. So it was basically adopted because the DOT regulations apply to longer trips, and the Secretary of Labor is authorized to regulate shorter trips, and so this applies as well to shorter trips. So that gets us sort of how DOL was then implementing. Yeah, DOL was implementing—the Secretary of Labor at the time decided that he was going to adopt the DOT regulations. Now, with respect to the Board's decision in this case, what standard of deference is it due, if any? Well, we argued in district court that it was our deference, and that's really our position, but we didn't think it was necessary to push that in this Court. And footnote 8— Ours coming under some sort of skepticism. I understand that, Your Honor. What we said in this Court—I understand, Your Honor. And what we said in this Court in footnote 8 of our brief was you don't have to decide this. We will accept the lower level of deference because we can show that the interpretation was persuasive, and that's the standard we're happy to accept in this particular case. That's under Mead? Under Skidmore, I guess. Skidmore, I'm sorry. Skidmore, yes. And so there are two basic reasons for the Administrative Review Board's decision. And that's what Judge Tallman did, right? Skidmore? Yes. Because he said our didn't apply, correct? Yes. So the first one is what you would call the circularity problem. The regulation says that if you have a personnel compartment that you carry people in, it's required to comply with certain standards. But that doesn't apply to buses. And so what the problem is, is if you take a truck and you add this compartment to it, if you say that immediately turns that into a bus, then you take it out of the very regulation that's intended to set up standards for these compartments. And that doesn't make any sense at all. The second reason is the language of designed and constructed. Now, when you take a pickup truck and you add this carrier to it, you might be able to argue that that's constructed, that the way it's constructed in a way that's designed to carry people in it. But you can't say it's designed, you can say it's constructed, but you can't say it's designed because you haven't designed anything. The only people who have designed this are the people who designed the truck at the beginning. And these are issues, these are definitions of issues that are intended to further the safety approach of the regulations. So that's the basis of the decision of the Administrative Review Board, and we think that's persuasive and the Court should uphold it. Thank you, Your Honor. Okay. Thank you. I think we understand your position. Let me start off by answering some of the questions. First, how many workers are in a crew carrier? It's 15. Fifteen passengers, 14 workers, plus a driver. With respect to the portable toilets, those are required by MISPA's Field Sanitation Regulations. We have to bring them. So you've made the passionate argument about safety, and what is it about the carrier plus attached trailer that's safer than a bus? The carrier is a bus. It's safe. The carrier itself is a bus, because it's primarily designed, constructed. Are you fighting over whether you can attach the trailer? Yes. So why did you get confused when I said something about a trailer? I mean, you're acting like I was on the wrong case, and it's all about the trailers. I apologize for, if I look at you. I had to look back and say, like... And I apologize for that. Yes, it's about the trailers. Obviously, we can drive a crew carrier anywhere we want, either if it's a truck or a bus. But when we attach a trailer, which is something we have to do because of the practical considerations that I discussed, then it becomes allegedly illegal if it is a truck. What's the safety improvement by attaching the trailer with a toilet on it? There isn't a safety improvement, but there's also no safety detraction. The Governance Council said that it causes safety issues. There's no evidence of that in the record. The ALJ looked at it and said, I can't find any safety rationale. The ARB specifically rejected looking at any safety issues. And one thing to know is, if you put a crew carrier and have a trailer on it, drive it 74.9 miles, it's legal. Now, I'd like to hit the last two arguments really quick in my last few seconds. Circularity. There's no circularity. We are always regulated, whether by the general standards or by the specific standards. The general motor vehicle standards apply. And the last one, we designed it, we planned it, we constructed it, we used it. It was designed, look at pages 150 and 151 of the record, which contains the plans for the design of the crew carrier. My time is up. Thank you for your honor's attention. Thank you, counsel. We appreciate your arguments and the matters submitted.
judges: Fisher, Paez, Callahan